```
            UNITED STATES DISTRICT COURT
           NORTHERN DISTRICT OF ALABAMA
                NORTHEASTERN DIVISION
```

**FILED**

**00 FEB 11 PM 3:39**

U.S. DISTRICT COURT
N.D. OF ALABAMA

RICKY G. CORNELIUS and )
ANITA D. CORNELIUS, )
                                )
    Plaintiffs, )
                                )
vs. ) Civil Action No. CV-99-S-3218-NE
                                )
AMSOUTH BANK, NA and )
TRANS UNION CORPORATION, )
                                )
    Defendants. )

**ENTERED**

**FEB 1 1 2000**

## MEMORANDUM OPINION

This action is before the court on the motion to dismiss (doc. no. 6) filed by defendant AmSouth Bank, N.A. ("AmSouth"). For the reasons discussed below, the court finds that AmSouth's motion is due to be granted in part and denied in part.

### I. BACKGROUND

Plaintiffs, Ricky G. and Anita D. Cornelius, applied for a loan with Hooper Mortgage Service ("Hooper"), a nonparty. (Complaint ¶ 6.) Plaintiffs sought to borrow $78,400 in the process of refinancing their home, and applied for the loan in both December 1998 and January 1999. (Id.) As part of the application process, Hooper requested a credit report from defendant Trans Union Corporation ("Trans Union"), which showed plaintiffs to have made numerous late payments to AmSouth during 1997. (Id. ¶ 7.) Plaintiffs dispute that they were delinquent in their payments, so

they contacted defendants and requested that they correct the mistake. (*Id.* ¶ 8.)

When defendants refused to correct the credit report, plaintiffs filed a formal investigation request on March 8, 1999, again denying the extent of the reported delinquency. (*Id.* ¶ 9.) Plaintiffs' attorney wrote a letter to both defendants on June 4, 1999, and "demanded that Defendants investigate the matter and report the results of the investigation to them and to each other." (*Id.* ¶ 10.)

Plaintiffs filed a complaint with the Federal Reserve Bank of Atlanta on August 17, 1999. (*Id.* ¶ 11.) Pursuant to such complaint, plaintiffs were notified that "AmSouth was unable to specifically confirm the negative information and ... that AmSouth has offered to remove all references to late payment from its file...." (*Id.*) Neither defendant removed the information, however. (*Id.*)

Thereafter, AmSouth notified plaintiffs by letter dated October 22, 1999 that "their file suggests that AmSouth has made accurate report [sic] regarding Plaintiffs [sic] payment history. ... AmSouth offered to remove from their file all references to late payments ... but conditioned the offer specifically on

2

execution by Plaintiffs of a Release and Settlement Agreement." (*Id.* ¶ 13.) Plaintiffs did not execute such an agreement, and "Defendants continue to report the incorrect and false information." (*Id.*) Hooper refused to refinance plaintiffs' home due to the information contained in the credit report.

Plaintiffs, therefore, instituted the present action on December 3, 1999, by filing a four count complaint in this court, alleging: first, that defendants willfully failed to reinvestigate the dispute and to promptly delete the dispute information from plaintiffs' file, in violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681n (Count I); second, defendants negligently failed to reinvestigate the dispute and to promptly delete the incorrect information, also in violation of the FCRA, 15 U.S.C. § 1681o (Count II); third, AmSouth is liable for civil extortion because it "specifically condition[ed] the restoration of" plaintiffs' credit report "upon their execution of a Release and Settlement agreement" (Count III); and finally, defendants "falsely or maliciously publish[ed] ... the said erroneous information in their credit report" and are liable for defamation and libel pursuant to Ala. Code §§ 6-5-182 through 6-5-189 (1972). (Count IV). Plaintiffs seek both actual and punitive damages,

3

costs, and attorneys' fees.

## II. STANDARD OF REVIEW

A court may dismiss a complaint for failure to state a claim only if it is clear that no relief can be accorded plaintiffs under any set of facts that could be proven consistent with the allegations in the complaint. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *see also Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir. 1986) ("[W]e may not ... [dismiss] unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him or her to relief."). The threshold requirements for a complaint to survive a Rule 12(b)(6) motion to dismiss thus are "exceedingly low." *Williams v. City of Montgomery*, 21 F. Supp. 2d 1360, 1363 (M.D. Ala. 1998).

## III. DISCUSSION

AmSouth bases the assertion that it is due to be dismissed from this lawsuit on three footings. First, it argues that plaintiffs have failed to state a claim under the FCRA. Second, AmSouth asserts that Alabama has not recognized a private right of action for civil extortion. Finally, AmSouth contends the FCRA preempts plaintiffs' state law defamation claims. The court will

4

address each argument in turn.

A.   Fair Credit Reporting Act

The purpose of the FRCA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit ... with regard to the confidentiality, [and] accuracy ... of such information in accordance with ... this subchapter." 15 U.S.C. § 1681 (b). Consistent with that Congressional statement of purpose, the FCRA as originally enacted applied only to "a 'consumer reporting agency' or 'user' of reported information who willfully[1] or negligently[2] violate[d] the [Act]." *Rush v. Macy's New York*,

---

[1] Section 1681n imposes civil liability for willful noncompliance of the FCRA, and provides, in pertinent part:

> Any person who obtains a consumer report from a consumer reporting agency under false pretenses or knowingly without a permissible purpose shall be liable to the consumer reporting agency for actual damages sustained by the consumer reporting agency or $1,000, whichever is greater.

15 U.S.C. § 1681n(b).

[2] Section 1681o similarly imposes civil liability for negligent noncompliance:

> Any person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of —
> 
>     (1) any actual damages sustained by the consumer as a result of the failure;
>     (2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

15 U.S.C. § 1681o(a).

*Inc.*, 775 F.2d 1554, 1557 (11th Cir. 1985). As defined by the statute, "consumer reporting agency"

> means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties....

15 U.S.C. § 1681a(f). A "user," is defined as:

> [A]ny person [who] takes any adverse action with respect to any consumer that is based in whole or in part on any information contained in a consumer report....

15 U.S.C. § 1681m.

Any entity designated as a mere "furnisher of information" was not originally covered under the FCRA, because it did not qualify as a "consumer reporting agency." *See e.g.*, *Rush*, 775 F.2d at 1557 (holding that Macy's was not a consumer reporting agency, because "[i]t did no more than furnish information to a credit reporting agency"); *Smith v. First National Bank of Atlanta*, 837 F.2d 1575, 1578 (11th Cir. 1988) (finding that, because "the Bank did no more than furnish information regarding an account in [plaintiff's] name to a credit reporting agency," the bank was not a consumer reporting agency); *DiGianni v. Stern's*, 26 F.3d 346, 349 (2d Cir. 1994) (concluding that "[r]etailers ... that merely furnish information to consumer reporting agencies based on their

6

experience with consumers are not consumer reporting agencies within the meaning of the FCRA").

In 1996, however, Congress amended the FCRA to allow limited liability against "furnishers of information." 15 U.S.C. § 1681s-2. The provision added by amendment, section 1681s-2, imposes two duties upon "furnishers of information": a duty to provide accurate information (*see* § 1681-s-2(a)); and a duty to undertake an investigation upon receipt of a notice of dispute from a consumer reporting agency (*see* § 1681s-2(b)).

Even so, by its own terms section 1681s severely limits its application. Subsection (a), imposing a duty to provide accurate information, "shall be enforced <u>exclusively</u> under section 1681s of this title by the Federal agencies and officials and the State officials identified in that section." 15 U.S.C. § 1681s-2(d) (emphasis supplied). Thus, an individual consumer may not bring a cause of action pursuant to this subsection. *See Carney v. Experian Information Solutions, Inc.*, 57 F. Supp. 2d 496, 502 (W.D. Tenn. 1999).

Similarly, subsection (b), imposing a duty to investigate the accuracy of reported information upon receipt of a notice of dispute, is not applicable to an individual consumer. *Id.* Rather,

subsection (b) is triggered only upon notice from a consumer reporting agency. *Id.*

> [Subsection (b)] exist[s] solely for the benefit of consumer reporting agencies which face liability under the remainder of the FCRA to the consumer for erroneous and inaccurate reporting. "Consumer reporting agencies naturally depend on suppliers of credit to furnish them with credit information. It is the consumer reporting agency that is charged with assuring the accuracy, confidentiality, and proper dissemination of this information, however." Consequently, the statutorily created obligation imposed on a furnisher of information is owed <u>only</u> to the consumer reporting agency not to the consumer, and an individual such as plaintiff cannot state a claim under 15 U.S.C. § 1681s-2(b).

*Id.* (quoting *DiGianni*, 26 F.3d at 349).

AmSouth asserts that it is described in plaintiffs' complaint as a "furnisher of information" and not as a "consumer reporting agency." Based on the above-stated legal principles, AmSouth contends that plaintiffs have failed to state a claim against it under the FCRA. This court agrees.

Plaintiffs' complaint summarizes the claims against both defendants as follows:

> 5. Defendants. Defendant AmSouth Bank is a national banking association doing business in numerous locations in the State of Alabama, including Birmingham, AL, Cullman, AL and Huntsville, AL. In connection with its banking business Defendant AmSouth Bank, at all time pertinent hereto, reported consumer credit information about the Plaintiffs to Defendant Trans Union Corporation.

8

> Defendant Trans Union Corporation is a national consumer reporting agency doing business in numerous locations in the State of Alabama, including Birmingham, AL, Cullman, AL, Huntsville, AL and Albertville, AL. At all times pertinent hereto Defendant Trans Union Corporation reported credit information, which it secured from AmSouth Bank, regarding Plaintiffs.

(Complaint ¶ 5.) Plaintiffs also allege that Trans Union was the entity that issued the credit report to Hooper, and that AmSouth was merely the holder of the second mortgage on their home. (*Id.* ¶ 7.) As such, AmSouth merely reported the delinquent payments to Trans Union, and cannot be considered a consumer reporting agency under the FCRA. As alleged in plaintiffs' complaint, therefore, AmSouth is merely a "furnisher of information"; and, because plaintiffs, as individual consumers, have no redress against such entities under the FCRA, these claims against AmSouth are due to be dismissed.

B. Civil Extortion

Plaintiffs' remaining claims against AmSouth are premised on the substantive law of the State of Alabama. Count II, plaintiffs' extortion claim, is asserted solely against AmSouth. In sum, plaintiffs allege that AmSouth agreed to remove the delinquent payments from plaintiffs' credit report, but "specifically condition[ed]" the removal upon plaintiffs' execution of a release

9

and settlement agreement. (Complaint ¶ 38.) Plaintiffs contend such conduct amounts to extortion under Ala. Code §§ 13A-8-13, -14 (1975).

The statute relied on by plaintiffs is contained in a portion of Alabama's criminal code. Section 13A-8-13 defines the crime of extortion in the following terms:

> A person commits the crime of extortion if he knowingly obtains by threat control over the property of another, with intent to deprive him of the property.

Section 13A-8-14 specifies the requisite elements for the crime of extortion in the first degree:

> (a) Extortion by means of a threat, as defined in paragraphs (13)a or (13)c of Section 13A-8-1, constitutes extortion in the first degree.
> (b) Extortion in the first degree is a Class B felony.

In basing their claim of "civil extortion" upon these statutes, plaintiffs attempt to create a private right of action for criminal acts allegedly committed by AmSouth. Plaintiffs fail, however, to produce any evidence that the Alabama Legislature intended to create such a civil remedy. Additionally, the court has not located any Alabama case law recognizing such a claim.

"A federal court may not read a private cause of action into a state statute absent 'clear and specific evidence' that the Legislature intended to authorize such a cause of action." *Leonard*

10

v. *Enterprise Rent a Car Co.*, 38 F. Supp. 2d 982, 984 (M.D. Ala. 1999) (quoting *Farlow v. Union Central Life Insurance Company*, 874 F.2d 791, 795 (11th Cir. 1989)). The Eleventh Circuit explained that such hesitancy is necessary because federal courts should not circumvent a state's legislative authority.

> [F]ederal courts should be reluctant to read private rights of action in state laws where state courts and state legislature have not done so. Without clear and specific evidence of legislative intent, the creation of a private right of action by a federal court abrogates both the prerogatives of the political branches and the obvious authority of states to sculpt the content of state law.

*Farlow*, 874 F.2d at 795 (quoting *A & E Supply Co. v. Nationwide Mutual Fire Ins. Co.*, 798 F.2d 669, 674 (4th Cir. 1986)).

Moreover, the Alabama Supreme Court also has demonstrated a reluctance to recognize a private cause of action under a statute that does not explicitly provide for one. *See Leonard*, 38 F. Supp. at 984 n.2. In *Martinson v. Cagle*, 454 So. 2d 1383 (Ala. 1984), the Supreme Court of Alabama rejected the notion that a civil remedy is created merely upon a showing of a criminal violation plus some resulting injury to the plaintiff.

> With regard to the four counts seeking civil liability for the criminal acts allegedly committed by [defendants], [plaintiffs] rely upon an early case in which this Court said that "every criminal act which injures the person or property of another is also a civil

11

> tort, redressable by the courts." The rule can be more properly stated as follows: Even though an act may constitute a crime, if it also results in injury to the person or property of another, the act may still be the basis of a civil action for damages. <u>However, civil liability will ensue only if the acts complained of violate the legal rights of the plaintiff, constitute a breach of duty owed to the plaintiff, or constitute some cause of action for which relief may be granted</u>. These four counts, which allege only that the criminal acts were committed and that the [plaintiffs] were thereby injured, do not state a cause of action for which relief may be granted, even if liberally construed.

*Martinson*, 454 So. 2d at 1385 (quoting *Hardie-Tynes Manufacturing Co. v. Cruse*, 189 Ala. 66, 78, 66 So. 657, 661 (1914) (emphasis supplied)).

Like the plaintiffs in *Martinson*, these plaintiffs have argued merely that AmSouth committed extortion by "specifically conditioning the restoration of [their credit] upon the execution of a Release and Settlement Agreement" (Plaintiffs' brief at 3), and that they have been injured through such conduct. Such allegations, however, are insufficient to establish that AmSouth's actions "violate[d] the legal rights of the plaintiff, constitute[d] a breach of duty owed to the plaintiff, or constitute[d] some cause of action for which relief may be granted." *Martinson*, *supra*. Moreover, plaintiffs have failed to produce <u>any</u> evidence, much less "clear and specific evidence", that

12

the Alabama Legislature intended to create a private right of action for extortion. Accordingly, Count III of plaintiffs' complaint also is due to be dismissed.

C. **Libel and Defamation**

Plaintiffs' final claims, for defamation and libel, are levied against both defendants. AmSouth moves to dismiss them on the grounds that they are preempted by the FCRA.

The FCRA expressly limits the right of a consumer to bring a state law claim of defamation. *See* 15 U.S.C. § 1681h(e). It grants consumer reporting agencies, users and furnishers of information "a qualified immunity from common law actions based on information which a consumer reporting agency was required by the [FCRA] to disclose. This immunity ... is the *quid pro quo* for compulsory disclosure." *Freeman v. Southern National Bank*, 531 F. Supp. 94, 96 (S.D. Tex. 1982); *see also Thornton v. Equifax, Inc.*, 619 F.2d 700, 703 (8th Cir. 1980) (noting that § 1681h(e) has been recognized as providing qualified immunity for entities included under FCRA).

Section 1681h(e), entitled "Limitation of liability," provides:

> Except as provided in sections 1681n and 1681o of this title, <u>no consumer may bring any action or proceeding in</u>

13

> <u>the nature of defamation</u>, invasion of privacy, or negligence with respect to the reporting of information <u>against</u> any consumer reporting agency, any user of information, or <u>any person who furnishes information to a consumer reporting agency</u>, <u>based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title</u>, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report <u>except as to false information furnished with malice or willful intent to injure such consumer</u>.

15 U.S.C. § 1681h(e) (emphasis supplied). The limitation contained within this provision is twofold. *Thornton*, 619 F.2d at 703. First, "the Act does not preclude an action at common law except where information that would give rise to a cause of action is obtained by the complainant pursuant to the provisions of the Act." *Hood v. Dun & Bradstreet, Inc.*, 486 F.2d 25, 32 (5th Cir. 1973).[3] Secondly, "no defamation or like actions are allowed under the Act unless malice or willful intent is alleged." *Thornton*, 619 F.2d at 703 (citations omitted).

Here, plaintiffs have alleged that defendants acted with malice and, therefore, their defamation claims are not preempted by the FCRA. *Lema v. Citibank (South Dakota), N.A.*, 935 F. Supp. 695, 698 (D. Md. 1996) (stating that § 1681h(e) allows a plaintiff to

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

14

bring a state law claim of defamation "provided such plaintiff alleges that defendants acted with malice or willful intent to injure plaintiff"). Plaintiffs specifically allege that defendants "falsely or maliciously" published the "erroneous information contained in their credit report and continu[ed] said publication after they became aware that said information could not be verified or substantiated." (Complaint ¶ 41.) Although this allegation is sufficient to overcome AmSouth's motion to dismiss, the court reminds plaintiffs that their burden is significantly greater to overcome summary judgment, because plaintiffs must produce sufficient evidence of malice as to create a triable issue of fact. *See Rhodes v. Ford Motor Credit Company*, 951 F.2d 905, 907 (8th Cir. 1991) (affirming the district court's grant of summary judgment because plaintiff failed to create a genuine issue of material fact as to whether defendant acted with malice or willful intent).

## IV. CONCLUSION

Based on the foregoing, the court finds that AmSouth's motion to dismiss is due to be granted with respect to Counts I, II, and III, but denied with respect to Count IV. An order consistent with this memorandum opinion will be entered contemporaneously herewith.

    **DONE** this \_\_11th\_\_ day of February, 2000.

                                                      *[signature]*
                                          United States District Judge

16